FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

2017 DEC 29 PM 2: 25

| | |
|---|---|
| RICHARD JOHNSTON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MARINEMAX EAST, INC., a Delaware corporation,<br><br>Defendant. | Case No. 8:17-cv-03122-T-33 MAP |

## COMPLAINT FOR RESCISSION AND DAMAGES

Plaintiff, RICHARD JOHNSTON ("**Mr. Johnston**"), sues Defendant, MARINEMAX EAST, INC., a Delaware corporation ("**MarineMax**"), and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Mr. Johnston is citizen of Indiana.

2. MarineMax is a Delaware corporation with its principal place of business in Clearwater, Pinellas County, Florida.

3. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties to this action are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391 because MarineMax resides and operates in Pinellas County, Florida, and the actions that form the basis for this case occurred in Sarasota County, Florida.

TPA 47935
$400

QB\48562538.1

## GENERAL ALLEGATIONS

5. MarineMax is a new and pre-owned boat dealership, which operates several locations throughout Florida, including in Sarasota, Florida.

6. Mr. Johnston and his family frequently visit Florida and own a vacation home in Sarasota, Florida.

7. In January 2014, Mr. Johnston began negotiations with the MarineMax Sarasota location to purchase a pre-owned 2009 Sea Ray 270 Sundancer, Hull ID No. SERR1553A909 (the "**Vessel**").

8. On January 14, 2014, Ms. Carrie Dennison ("**Ms. Dennison**"), the MarineMax Sales Consultant working with Mr. Johnston, emailed him regarding the ongoing negotiations concerning the Vessel. Ms. Dennison stated in the email that the surveyor, retained by Mr. Johnston to conduct a survey of the Vessel, requested a copy of the Vessel's service history. Ms. Dennison indicated that she refused to provide the work orders previously performed on the Vessel to the surveyor because they were "private to the previous owner" and that she "cannot disclose or share these records." But, Ms. Dennison went on to state, "I have full access to the records and have reviewed EVERY work order previously completed on this boat since it was purchased new by the original owner in September 2010. I found *no significant, major or re-occurring issues in the service history*. Most of the Work Orders were either general services (annual service, etc.) or minor cosmetic concerns ... all of which were addressed at the time of occurrence." (emphasis added). A true and correct copy of Ms. Dennison's email correspondence is attached hereto as **Exhibit "A."**

9. On January 18, 2014, Snead Island Marine Surveyors surveyed the Vessel and did not note any significant mechanical issues with the Vessel. A true and correct copy of the

Condition and Value Survey prepared by Snead Island Marine Surveyors is attached hereto as **Exhibit "B."**

10. On January 27, 2014, Mr. Johnston purchased the Vessel from MarineMax for a total purchase price of $94,743.78 (the **"Purchase Agreement"**). A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit "C."**

11. On February 24, 2014, less than a month following Mr. Johnston's purchase of the Vessel, the Vessel's engine died while in use by Mr. Johnston. Mr. Johnston returned the Vessel to MarineMax's Sarasota location to have the engine checked. A true and correct copy of the associated Work Order is attached hereto as **Exhibit "D."**

12. The following day, on February 25, 2014, Mr. Johnston retrieved the Vessel from MarineMax's Sarasota location, only for the Vessel's engine to die, once again, a mere 20 minutes following Mr. Johnston's departure.

13. That day, on February 25, 2014, Mr. Johnston returned the Vessel to MarineMax's Sarasota location, again, in order to address the engine failure issue. A true and correct copy of the associated Work Order is attached hereto as **Exhibit "E."**

14. Following Mr. Johnston's retrieval of the Vessel from MarineMax, on March 3, 2014, the Vessel's engine died for a third time a month later, on April 7, 2014, and again, Mr. Johnston return the Vessel to MarineMax for repairs. A true and correct copy of the associated Work Order is attached hereto as **Exhibit "F."**

15. Between April 2014 and April 2017, notwithstanding MarineMax's maintenance and repair attempts on the Vessel, Mr. Johnston continued to experience repeated engine failures while driving the Vessel. A true and correct copy of the associated Work Orders are attached hereto as **Exhibit "G."**

QB\48562538.1

16. On April 6, 2017, following another engine failure, Mr. Johnston contacted MarineMax's Sarasota location and was informed that there would be a three (3) week wait for maintenance availability. As a result, Mr. Johnston took the Vessel to another local marine servicing company, Walt's Marine Service ("**Walt's**"). While servicing the Vessel, Walt's learned from Mercury Marine, the engine manufacturer, that the Vessel, prior to Mr. Johnston's purchase of the Vessel, had similar engine failure issues. A true and correct copy of the associated Boat Repair Invoice is attached hereto as **Exhibit "H."**

17. Upon learning that the Vessel had a history of repeated engine failures, contrary to the representations made by Ms. Dennison when Mr. Joshnston purchased the Vessel, Mr. Johnston located and contacted the original owner of the Vessel, Mr. Alan J. Rechter ("**Mr. Rechter**"). Mr. Rechter purchased the Vessel new from MarineMax's Houston location in September 2010. Mr. Rechter informed Mr. Johnston that he had used the Vessel on only three (3) occasions and each time he experienced similar engine failure issues just like what Mr. Johnston was experiencing. As a result of the engine failure issues Mr. Rechter experienced, MarineMax ultimately purchased the Vessel back from him. Mr. Rechter's understanding following the repurchase of the Vessel by MarineMax was that the Vessel would be scrapped as it was too dangerous for future use. A true and correct copy of Mr. Rechter's Vessel/Boat Application and the Affidavit of Alan Rechter, testifying to the above information, is attached hereto as composite **Exhibit "I."**

18. Based on the Vessel's repeated engine failures, and the danger such malfunctions could cause, Mr. Johnston can no longer safely use the Vessel.

19. In June and July 2017, Mr. Johnston directly communicated with MarineMax in an attempt to return the Vessel in consideration for the return of Mr. Johnston's $94,743.78 purchase price, but MarineMax refused.

20. On October 9, 2017, Mr. Johnston, through counsel, again offered to return the Vessel to MarineMax in exchange for the remittance of Mr. Johnston's $94,743.78 purchase price, but again, MarineMax refused. A true and correct copy of this October 9, 2017 correspondence is attached hereto as **Exhibit "J."**

21. All conditions precedent to bringing this suit have occurred, have been satisfied, or have been waived.

## COUNT I - FRAUDULENT INDUCEMENT

22. Mr. Johnston incorporates paragraphs 1 through 21, above, as though fully set forth herein.

23. MarineMax made false statements concerning material facts to Mr. Johnston in the email sent by Ms. Dennison on January 14, 2014, when Ms. Dennison stated:

> I have full access to the records and have reviewed EVERY work order previously completed on this boat since it was purchased new by the original owner in September 2010. I found *no significant, major or re-occurring issues in the service history.* Most of the Work Orders were either general services (annual service, etc.) or minor cosmetic concerns ... all of which were addressed at the time of occurrence. (emphasis added).

24. Since MarineMax had previously repurchased the Vessel back from Mr. Rechter due to repeated engine failures, and Ms. Dennison stated she had reviewed "EVERY work order previously completed on this boat since it was purchased new by the original owner in September 2010," MarineMax knew the Vessel had repeated engine failure issues, rendering Ms. Dennison's representations that the Vessel had "no significant, major or re-occurring issues" false.

25. Additionally, since MarineMax chose to disclose some information concerning the Vessel's service history, namely that the Vessel had "no significant, major or re-occurring issues," MarineMax was required to disclose all facts material to the Vessel's service history, including that the Vessel had previously been repurchased by MarineMax due to repeated engine failure issues.

26. MarineMax made the misrepresentations regarding the service history of the Vessel in order to falsely assure Mr. Johnston that the Vessel had a clean service history and to induce Mr. Johnston to purchase the Vessel.

27. Mr. Johnston relied on MarineMax's misrepresentations regarding the service history of the Vessel to his detriment.

28. Mr. Johnston was injured as a result of the misrepresentations made by MarineMax with regards to the service history of the Vessel in that Mr. Johnston purchased the Vessel but is unable to use it. Mr. Johnston also incurred maintenance and repair costs in an effort to try to determine the pre-existing engine issues associated with the Vessel.

29. Mr. Johnston has made repeated requests to MarineMax to return the Vessel in exchange for fair compensation, but MarineMax has refused all such requests.

WHEREFORE, Mr. Johnston requests that this Court enter judgment in his favor and against MarineMax for:

A. Rescission of the Purchase Agreement;

B. Return of the $94,743.78 purchase price paid for the Vessel by Mr. Johnston;

C. Special damages, including punitive damages, based on MarineMax's misrepresentations made with regards to the Vessel's service history; and,

D. For such other relief as the Court deems just and proper.

## COUNT II - VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

30. Mr. Johnston incorporates paragraphs 1 through 21, above, as though fully set forth herein.

31. Ms. Dennison's statements that she had reviewed "EVERY work order previously completed on this boat since it was purchased new by the original owner in September 2010" and that the Vessel had "no significant, major or re-occurring issues in the service history" were deceptive, unfair, and misleading regarding the service history of the Vessel.

32. Ms. Dennison's statements concerning the service history for the Vessel caused Mr. Johnston to purchase the Vessel from MarineMax.

33. Mr. Johnston was damaged as a result of Ms. Dennison's statements in that he purchased the Vessel for $94,743.78, but due to the Vessel's repeated engine failures, Mr. Johnston has been unable to use the Vessel. Mr. Johnston has also incurred maintenance and repair costs in an effort to try to determine the engine issues associated with the Vessel to his detriment.

WHEREFORE, Mr. Johnston requests that this Court enter judgment in his favor and against MarineMax for:

E. Damages based on MarineMax's deceptive and unfair statements made with regards to the Vessel's service history;

F. The attorneys' fees and costs incurred by Mr. Johnston; and

G. For such other relief as the Court deems just and proper.

Dated: December 28, 2017.

Respectfully submitted,

/s/ *Sara D. Dunn*
Sara D. Dunn
Florida Bar No. 106923
sara.dunn@quarles.com
John M. Guard
Florida Bar No. 374600
john.guard@quarles.com
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602
Phone: 813/387-0300
lynda.dekeyser@quarles.com

*Attorneys for Plaintiff, Richard Johnston*